UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DAVID B. HUDSON,

                    Plaintiff,                        Case No. 2:25-cv-1

v.                                                    Honorable Phillip J. Green

GRETCHEN WHITMER, et al.,

                    Defendants.
_____/

**<u>OPINION</u>**

        This is a civil rights action brought by a state prisoner.  The Court will grant

Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and

Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all

matters in this action under the jurisdiction of a United States Magistrate Judge.

(ECF No. 4.)

        This case is presently before the Court for preliminary review under the Prison

Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant

to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is

required to conduct this initial review prior to the service of the complaint.  *See In re*

*Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v.*

*Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the

named defendants is of particular significance in defining a putative defendant's

relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's amended complaint as frivolous and for failure to state a claim for the reasons detailed below.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

<u>**Discussion**</u>

## I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan.  The events about which he complains occurred at that facility. Plaintiff sues Michigan Governor Gretchen Whitmer, MDOC Director Heidi Washington, MDOC Department of Risk Management Supervisor Matt McCave, NCF Warden Donald Curley, and NCF Correctional Officer J. Ward.  (Am. Compl., ECF No. 6, PageID.60, 61.)  Plaintiff sues Defendants in their individual and official capacities.  (*Id.*, PageID.61.)

In Plaintiff's amended complaint,[2] he alleges that on May 15, 2023, Defendant Ward ordered Plaintiff "to be on his assigned bunk . . . inside Unit 5."[3]  (*Id.*, PageID.63.)  Plaintiff complied with Defendant Ward's order, and Plaintiff was

---

[2] In addition to filing an amended complaint, which Plaintiff was ordered to do by the Court in an order entered on March 6, 2025, Plaintiff filed an "Affidavit of Service" (ECF No. 7) and a document about Plaintiff's purported status as "a Registered Trust" (ECF No. 8). With regard to Plaintiff's "Affidavit of Service," in this document, Plaintiff states that he attempted to serve Defendants with this lawsuit and that they have failed to respond. (*See* ECF No. 7.) The Court notes that service has not yet been ordered in this case, and as such, no response is required by Defendants at this time. Further, with respect to Plaintiff's document detailing his purported status as "a Registered Trust," this document appears to be based on Moorish American or sovereign citizen ideology, which courts routinely dismiss as utterly frivolous. *See, e.g.*, *Bey v. Butzbaugh*, No. 1:13-cv-1173, 2014 WL 5149931, at *4 (W.D. Mich. Oct. 14, 2014); *see also United States v. Coleman*, 871 F.3d 470, 476 (6th Cir. 2017) (discussing, in the context of a criminal case, the "meritless rhetoric frequently espoused by tax protesters, sovereign citizens, and self-proclaimed Moorish-Americans" (citations omitted)).

[3] In this opinion, the Court corrects the punctuation and capitalization in quotations from Plaintiff's filings.

"sitting at the head of his bunk when he was approached by [Defendant] Ward." (*Id.*) Defendant Ward "bent down and with his right hand proceeded to squeeze Plaintiff's testicles and penis, causing [Plaintiff] to yelp in pain." (*Id.*)  Plaintiff states that "the event lasted no more than three seconds." (*Id.*)  Plaintiff further states that Defendant Ward "was not conducting a routine pat-down or body search during the time he forcefully grabbed and twisted Plaintiff's penis and testicles, but instead had mail in his left hand the entire time." (*Id.*)  Shortly thereafter, Plaintiff reported the incident to an unnamed, non-party resident unit manager. (*Id.*)  Plaintiff was then "sent to medical," and he was told that he "would be moved to another Unit." (*Id.*)

Subsequently, on May 18, 2023, Plaintiff filed a grievance about the incident with Defendant Ward, and on May 25, 2023, the NCF grievance coordinator told Plaintiff that his grievance would be treated as a Prison Rape Elimination Act (PREA) grievance. (*Id.*)  That same day, May 25, 2023, Plaintiff "created a Tort Claim Notice, entitled 'Affidavit of David Blake Hudson #DBH-2023-NCF-001,' and sent it to" Defendants Curley and Ward, and several other individuals at NCF, all of whom are not parties to the present suit. (*Id.*; *see* ECF No. 1-1, PageID.8–9.)  Plaintiff claims that "after the time limit had passed for response to the first notice without receiving a response from the above recipients, Plaintiff created a second notice, entitled 'Affidavit of Fault Opportunity to Cure #DBH-061223,' and sent it, along with the first notice," to Defendants Washington, McCave, and Whitmer. (Am. Compl., ECF No. 1, PageID.63.)  Plaintiff states that "after the time for [a] response had lapsed for the 'Affidavit of Fault Opportunity to Cure,'" Plaintiff "received [the] findings of [the]

investigation [by] the [non-party] NCF PREA coordinator and [non-party Assistant Resident Supervisor] Parker stating that a full investigation was concluded on the same day the report was made, . . . and that there was insufficient evidence to substantiate Plaintiff's claim." (*Id.*) Plaintiff later received a letter from Defendant Whitmer, thanking Plaintiff for his correspondence and indicating that his "correspondence [wa]s being reviewed by the appropriate members of [Whitmer's] Office." (*Id.*, Letter, ECF No. 6-1, PageID.69.) Plaintiff states that this letter "was insufficient to satisfy the obligation of the Tort Claim Contract." (Am. Compl., ECF No. 1, PageID.63.)

On August 3, 2023, Plaintiff had a "trusted friend and co-trustee" send a "Final Notice of Default Agreement . . . to all above named respondents." (*Id.*) "After the time limit had passed for a response to the 'Final Notice of Default' from the above named respondents, [Plaintiff's friend and co-trustee] prepared a 'Certificate of Non-Response,' and recorded said Tort Claim with the Federal Reserve Bank of New York." (*Id.*, PageID.64.)

Plaintiff states that at some unspecified time after the May 15, 2023, incident with Defendant Ward, Ward "was promoted to a sergeant position," and "it is Plaintiff's belief that he has been the proximate cause for unwarranted shakedowns against Plaintiff that result in property damage, premature property confiscation, and frivolous misconduct tickets being issued to Plaintiff." (*Id.*) Additionally, "it is

Plaintiff's belief that there is no coincidence that he is the reviewing officer, finding Plaintiff guilty despite clear evidence of Plaintiff's innocence." (*Id.*)[4]

Based on the foregoing allegations, the Court construes Plaintiff's amended complaint to raise the following claims pursuant to 42 U.S.C. § 1983: First Amendment retaliation claims, Eighth Amendment claims, and Fourteenth Amendment procedural due process claims. It appears that Plaintiff is also seeking to enforce his "tort claim contract" against Defendants. (*See generally id.*)  As relief, Plaintiff seeks monetary damages and "injunctive relief from retaliation and transfer." (*Id.*, PageID.65.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[4] In the amended complaint, Plaintiff states: "recent misconduct tickets attached"; however, no such documents were attached to the amended complaint. (Am. Compl., ECF No. 6, PageID.64.)

7

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.    Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).    "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.    Fictitious "Tort Claim Contract"

In Plaintiff's complaint, he references his attempts to enforce what he calls a "tort claim contract" against Defendants, and Plaintiff states that he registered this "tort claim contract" "with the Federal Reserve Bank of New York."  (Am. Compl., ECF No. 1, PageID.64.)

Upon review of the documents submitted by Plaintiff, Plaintiff's purported "tort claim contract" arose from Plaintiff sending documents to the individuals named as Defendants in this suit demanding that they respond to Plaintiff's claims within a period of time arbitrarily set by Plaintiff "or else [they] agree in tacit agreement under the doctrine of silent acquiescence that this instrument shall serve as prima face [sic] evidence of truth no longer disputed in any court . . . ." (ECF No. 1-1, PageID.8.) Although Plaintiff believes this "tort claim contract" is enforceable, this fictitious "contract" relies on "sovereign citizen" ideology and Plaintiff's self-proclaimed status

as a "Moorish American." (*See, e.g.*, ECF No. 8, PageID.78 (stating that Plaintiff is "a sundry Free Moor, and a Descendant of Free moors in America" (capitalization in original retained)).) Under these circumstances, it is not clear that the Court has jurisdiction over Plaintiff's so called "tort claim contract" because there is no jurisdiction for fictitious claims. *See, e.g.*, *Boeing Co. v. United States*, 968 F.3d 1371, 1383 (Fed. Cir. 2020) (discussing that "[a]llegations of subject matter jurisdiction, to suffice, must satisfy a relatively low standard—[i.e., they] must exceed a threshold that 'has been equated with such concepts as essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit'" (citation omitted)).

Moreover, even setting this issue aside and turning to the merits of these claims, Plaintiff's fictitious "tort claim contract" is based on "redemptionist and sovereign citizen" arguments, which courts have repeatedly dismissed as utterly frivolous and for failure to state a claim. *See, e.g.*, *Bey v. Butzbaugh*, No. 1:13-cv-1173, 2014 WL 5149931, at *4 (W.D. Mich. Oct. 14, 2014) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources." (citing *Muhammad v. Smith*, No. 3:13-cv-760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014), and collecting cases)); *Payne v. Klida*, No. 15-cv-14127, 2016 WL 491847, at *3–4 (E.D. Mich. Jan. 6, 2016) (citing cases); *Hampton v. City of Durham*, No. 1:10-cv-706, 2010 WL 3785538, at *2–3 (M.D.N.C. Sept. 22, 2010) (collecting cases and holding that "[a]ny claims or arguments raised by Plaintiff which are based on his membership in the Moorish American Nation are frivolous"). Accordingly, all of

Plaintiff's fictitious claims regarding the enforcement of his "tort claim contract" will be dismissed as frivolous and for failure to state a claim upon which relief may be granted.

### B.    Section 1983 Claims

As noted above, the Court construes Plaintiff's amended complaint to raise the following claims pursuant to 42 U.S.C. § 1983 against Defendants in their individual and official capacities: First Amendment retaliation claims, Eighth Amendment claims, and Fourteenth Amendment procedural due process claims.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The Court addresses Plaintiff's First Amendment retaliation claims, Eighth Amendment claims, and Fourteenth Amendment procedural due process claims against Defendants in their individual and official capacities below.

### 1.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities.  (Am. Compl., ECF No. 6, PageID.61.)  A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the State of Michigan and the MDOC.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71

(1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan and the MDOC are not "persons" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages and injunctive relief. (Compl., ECF No. 1, PageID.7.) However, as noted above, the State of Michigan and the MDOC are not "persons" who may be sued under § 1983 for money damages. *See id.* Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme

11

Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).   Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).   Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again.  *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).   A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102.

In the present action, Plaintiff does not allege the existence of an official policy or practice.  And, although Plaintiff alleges in a vague and conclusory manner and without providing any specific dates that he believes he has been subject to "unwarranted shakedowns" as a result of Defendant Ward's promotion to sergeant, Plaintiff fails to allege sufficient *facts* to suggest that the activities alleged in the complaint are likely to occur to him again.  Instead, Plaintiff's allegations relate solely

to past harm, not future risk of harm.  Therefore, Plaintiff does not seek relief properly characterized as prospective.  *See Ladd*, 971 F.3d at 581.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

### 2.    Defendants Whitmer, Washington, McCave, and Curley

As to Defendants Whitmer, Washington, McCave, and Curley, Plaintiff alleges that he sent various notices related to his "tort claim contract" to these Defendants. (Am. Compl., ECF No. 6, PageID.63.)  Plaintiff contends that Defendants did not respond to the majority of his notices, and that Defendant Whitmer's response "was insufficient to satisfy the obligation of the Tort Claim Contract."  (*Id.*)

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.   And, a claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  Further, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance or other document sent to them.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Here, Plaintiff fails to allege any facts to show that Defendants Whitmer, Washington, McCave, and Curley engaged in any active unconstitutional conduct.

Moreover, to the extent that Plaintiff seeks to hold Defendants Whitmer, Washington, McCave, and Curley liable due to their supervisory positions, government officials, such as Defendants, may not be held liable for the

unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, the factual allegations in the complaint, which are summarized above, are insufficient to show that Defendants Whitmer, Washington, McCave, and Curley encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. And, any conclusory allegations of supervisory responsibility are insufficient to show that Defendants Whitmer, Washington, McCave, and Curley were personally involved in the alleged violations

of Plaintiff's constitutional rights.  *See, e.g., Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Therefore, for these reasons, Plaintiff fails to state any claim upon which relief may be granted against Defendants Whitmer, Washington, McCave, and Curley. Accordingly, Defendants Whitmer, Washington, McCave, and Curley and Plaintiff's claims against them will be dismissed for failure to state a claim.

### 3.    Defendant Ward

#### a.    First Amendment Retaliation Claim

Plaintiff claims that Defendant Ward violated his First Amendment rights by retaliating against him after Ward was promoted to sergeant.  (*See* Am. Compl., ECF No. 6, PageID.64, 65.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

15

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references filing a grievance that was converted to a PREA grievance, which is sufficient to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Here, Plaintiff alleges that at some unspecified time after the May 15, 2023, incident with Defendant Ward, Ward "was promoted to a sergeant position," and "it is Plaintiff's belief that he has been the proximate cause for unwarranted shakedowns against Plaintiff that result in property damage, premature property confiscation, and frivolous misconduct tickets being issued to Plaintiff." (Am. Compl., ECF No. 6, PageID.64.) Additionally, "it is Plaintiff's belief that there is no coincidence that he

16

is the reviewing officer, finding Plaintiff guilty despite clear evidence of Plaintiff's innocence." (*Id.*) Plaintiff provides no further facts about the specific events that he is referencing.

Even assuming, without deciding, that Plaintiff's vague allegations regarding unspecified misconduct tickets and unspecified property deprivation constitute adverse actions, Plaintiff's retaliation claims fail at the third step. Plaintiff's allegations of retaliatory action are entirely conclusory. Plaintiff merely alleges the ultimate fact of retaliation without providing any supporting *factual* allegations to even suggest that the alleged adverse actions were motivated by the protected conduct. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for these reasons, any intended First Amendment retaliation claims against Defendant Ward will be dismissed for failure to state a claim.

b.    **Eighth Amendment Claim**

Plaintiff alleges that on May 15, 2023, he was "sitting at the head of his bunk," as he had been ordered to do by Defendant Ward," and that thereafter, "[Plaintiff] was approached by [Defendant] Ward."    (Am. Compl., ECF No. 6, PageID.63.) Plaintiff claims that Defendant Ward "bent down and with his right hand proceeded to squeeze Plaintiff's testicles and penis, causing [Plaintiff] to yelp in pain."    (*Id.*) Plaintiff states that Defendant Ward "was not conducting a routine pat-down or body search during the time he forcefully grabbed and twisted Plaintiff's penis and testicles, but instead had mail in his left hand the entire time."    (*Id.*)    The Court construes these allegations to raise an Eighth Amendment claim against Defendant Ward.

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards).    However, not all allegations regarding isolated incidents of sexual touching rise to the level of an Eighth Amendment violation.    *See, e.g.*, *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a

male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).  Nonetheless, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment claim against Defendant Ward regarding Ward's actions on May 15, 2023.

### c.    Fourteenth Amendment Due Process Claim

Plaintiff alleges in a vague and conclusory manner that after Defendant Ward was promoted to sergeant, Plaintiff was subjected to "unwarranted shakedowns . . . that result in property damage [and] premature property confiscation . . . ."  (Am. Compl., ECF No. 6, PageID.64.)  The Court construes these allegations to raise a procedural due process claim regarding the deprivation of Plaintiff's property. However, as explained below, these claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law."  *Id.* at 537.  This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an

established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984).

Plaintiff must plead and prove the inadequacy of state post-deprivation remedies.

*See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).

The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires

dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th

Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are

inadequate.  Plaintiff has available to him numerous state post-deprivation remedies.

The Sixth Circuit has specifically held that Michigan provides adequate

post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.

Plaintiff fails to allege any reasons why a state-court action would not afford him

complete relief for the deprivations, either negligent or intentional, of his personal

property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due

process claim regarding the deprivation of his property.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*.  Having

conducted the review required by the PLRA, the Court determines that Defendants

Whitmer, Washington, McCave, and Curley will be dismissed for failure to state a

claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The

Court will also dismiss, as frivolous and for failure to state a claim, Plaintiff's claims

regarding the enforcement of his "tort claim contract."  Further, the Court will

dismiss Plaintiff's official capacity claims, First Amendment retaliation claim, and

Fourteenth Amendment due process claim against remaining Defendant Ward for failure to state a claim. Plaintiff's Eighth Amendment claim against Defendant Ward in Ward's individual capacity regarding the May 15, 2023, incident between Ward and Plaintiff remains in the case.

An order consistent with this opinion will be entered.


Dated:  April 7, 2025                              /s/ Phillip J. Green
                                                   PHILLIP J. GREEN
                                                   United States Magistrate Judge

21